## BROTHERHOOD OF RAILROAD TRAINMEN v. BROWN.

No. 22431.   Oct. 2, 1934.

Rehearing Denied Dec. 18, 1934.

Roscoe E. Harper and Gentry Lee, for plaintiff in error.

Glenn O. Young, for defendant in error.

PER CURIAM. The parties will be referred to as they appeared in the lower court, plaintiff in error as defendant and defendant in error as plaintiff. On the 29th day of May, 1914, the Brotherhood of Railroad Trainmen, a fraternal insurance organization, issued a certificate to Fred O. Garletts, a member of Youghiogheny Lodge No. 218, by the terms of which they insured the life of the said Fred O. Garletts. Under the terms and conditions of said certificate, the beneficiary named in said certificate was his mother, Maud L. Garletts, who, the evidence shows in this cause, subsequently married and her name was changed to Maud L. Brown, she being plaintiff in this cause. Fred O. Garletts died on the 25th day of December, 1927, and there became due and payable under this certificate to the beneficiary the sum of $1,875.

At the time of the death of Fred O. Garletts, he left surviving him his wife, Martha Anna Garletts. On the 29th day of December, 1927, the secretary of the local lodge called at the home of Martha Anna Garletts and procured from Maud L. Brown the necessary death proof, which was forwarded to the Grand Lodge, it becoming necessary to obtain proof of the marriage of the plaintiff, Maud L. Brown, subsequent to the issuance of the policy of insurance, which was later made a part of the proof of death. On January 10, 1928, the secretary of the local lodge again visited the home of Martha Anna Garletts, in which the plaintiff, Maud L. Brown, was visiting, and presented an assignment received from the Grand Lodge, which under its terms assigned all of proceeds of said insurance policy to Martha Anna Garletts, and procured the signature of Maud L. Brown to said assignment, which was witnessed by the secretary and another person. This assignment was sent in to the Grand Lodge, and the check for $1,875 was made to Martha Anna Garletts in compliance with the terms of said assignment. On February 10, 1928, an officer of the local lodge appeared at the home of Martha Anna Garletts with the check or draft for $1,875, and found Maud L. Brown, the plaintiff in this cause, at said residence, and was in-

formed by her that Martha Anna Garletts was not at home. He left word with Maud L. Brown to inform Martha Anna Garletts that he had the check for said insurance. Later in the day Martha Anna Garletts appeared at his home and he delivered said check to her.

Maud L. Brown states that she was not aware that it was the insurance check that was being delivered, but thought it was some other check. The check was delivered to Martha Anna Garletts and her receipt taken therefor. Some contention arose subsequently over the payment of the insurance to Martha Anna Garletts, the plaintiff claiming that the assignment was procured by fraud, and on the 13th day of September, 1929, the plaintiff, Maud L. Brown, filed an action in the district court of Creek county, Oklahoma, against the Brotherhood of Railroad Trainmen to recover from them $1,875, the amount she claims due under the policy, which had never been paid to her.

To the plaintiff's petition, an answer was filed by the defendant, setting up the fact that the insurance had been assigned by Maud L. Brown to Martha Anna Garletts, and that they had paid the insurance to the said Martha Anna Garletts in good faith. The plaintiff then filed a reply claiming that the assignment was procured by fraud, claiming that the secretary of the local lodge had stated to her at the time she signed the instrument that it was a paper of another character, that the light was poor and that she did not have her glasses, that she was 65 years of age, and relied upon the statement of the officer presenting it, and that by reason thereof she had been defrauded.

The case was tried to a jury in the court below, and a verdict was rendered for the plaintiff for $1,875, with interest at six per cent. from and after December 25, 1927, on which judgment was rendered. The plaintiff in error, the defendant in the court below, filed its motion for a new trial, which was overruled, and has perfected its appeal, and the cause is now here for decision.

The plaintiff in error urges a number of assignments of error excepting to certain instructions given by the trial court, and calling attention to conflicts in such instructions. It is contended that the burden of proof is on one seeking to set aside a written instrument of assignment or release; and that portion of the instructions of the trial court wrongfully placed that burden upon the parties standing upon such assignment or release, rather than upon the parties seeking to set the assignment aside. In our opinion,

such an instruction would be error. But, inasmuch as this cause must be reversed and remanded for new trial on other grounds, it is unnecessary to discuss those assignments of error at length. No doubt, the trial court upon final trial will properly instruct the jury as to the burden of proof and will avoid any of the conflicts complained of in the instant case.

The defendant, however, calls the attention of the court to its fourth assignment of error, and argues it under proposition 4, which he set forth as follows:

"Plaintiff's counsel was guilty of prejudicial misconduct in making a statement in his argument to the jury that no doubt defendant's secretary of the lodge was under bond and that the lodge would collect off of him for any loss in the case."

The record discloses the following proceedings at the trial of the cause:

"Mr. Harper: Comes now the defendant and moves that the jury be discharged from further consideration in this case for the reason that plaintiff's counsel, during argument to the jury, made a statement that the defendant's secretary of the lodge, Mr. Coughenour, was doubtless under bond and that the lodge could collect off of him for any loss in this case. That is in substance the statement that was made, isn't it, Mr. Young? Mr. Young: Let the record show that the statement was objected to and it was withdrawn from the consideration of the jury. Mr. Harper: You cannot destroy the effect of it on the jury. The Court: The motion will be overruled. Mr. Harper: To which the defendant excepts. I wish the court would make a statement because the reporter was not taking down the argument. Mr. Young: I will admit that what counsel said is in substance what was said. The Court: I cannot recall just the exact words of the statement. Mr. Harper: Counsel will agree that he said he was no doubt under bond and—Mr. Young: Yes. The Court: The motion is overruled. Mr. Harper: Defendant excepts and wishes this to be incorporated in the bill of exceptions to case-made."

Plaintiff in error contends that the remarks of counsel as reflected by this proceeding were prejudicial error, and cites as an authority the case of Yoast v. Sims, reported in 122 Okla. 200, 253 P. 504; in which Judge Hefner, in the syllabus in said cause, states the following as the law of Oklahoma:

"In a suit for personal injuries, after the jury has been sworn and placed in the jury box, no references should be made as to whether or not the defendant carried insurance, and if such references are made, it is reversible error, although the trial court instructs the jury not to consider the same"

—and contends this is a case in point. We are inclined to agree with counsel for plaintiff in error. The evidence in this case was sharply conflicting and was very close to the borderline throughout. The evidence discloses that the plaintiff had executed an assignment of her claim to Martha Anna Garletts. There being no dispute that the defendant had paid out the entire amount on the claim to Martha Anna Garletts, the only way that the plaintiff could recover was to substantiate her claim of fraud to the satisfaction of the jury under the instructions given by the court.

It was an exceedingly close question to be decided by the jury, and a matter upon which persons could well differ as to whether the rather rigid requirements of the law as applied to the testimony had been met in a case of this character. Under the allegations of the defendant in this cause, the defendant had paid out the full amount of the claim in good faith to Martha Anna Garletts, and if the plaintiff was successful in her suit, they would be required to pay it out a second time. There was nothing in the evidence, and could not properly be anything in the evidence, disclosing that the secretary of the local lodge was under bond to the Grand Lodge for any misconduct upon his part in the settlement of the claim, and that the secretary would be required to hold the Grand Lodge harmless for his acts. The assertion of counsel in his argument that the secretary of the local lodge was doubtless under bond to the Grand Lodge would have this effect upon the jury: That if a mistake had been made by the secretary of the local organization, either by accident or design, or through ignorance or fraud, it would be wholly immaterial to the defendant, and the defendant could not lose anything in the event a verdict was rendered against it. Therefore, a statement made by counsel in his argument, that the secretary of the local organization was doubtless under bond to indemnify the defendant in such an event, is not only highly prejudicial to the rights of the defendant, but reprehensible in the extreme upon the part of counsel, and neither he nor his client should be permitted to benefit by such statement.

In the case cited by counsel for the plaintiff in error, Yoast v. Sims, supra, there is quoted with approval a case from the Supreme Court of Colorado, Coe et al. v. Van Why, reported in 33 Colo. 315, 80 P. 894, 3 Ann. Cas. 552, which is a suit brought for the death of a miner. We quote from the opinion as follows:

"In his opening argument, after the evidence was in and the instructions given, one of plaintiff's counsel made the following statement to the jury: 'It is a matter of common knowledge that employers and mining companies in this district protect themselves against liability on account of accidents by taking out insurance in insurance companies against such liability.'

"There was not a word of evidence in the record of any such custom. Its admission would constitute error. When counsel for defendants objected to this statement, plaintiff's attorney, who made it, further remarked:

"'Add to that that I prefaced that statement with the further statement that what I was about to comment upon was not in this case, and I simply commented upon it as a matter of common knowledge and observation in this community.' * * *

"That it was improper is conceded by counsel who made it, but it is said that no prejudice resulted to defendants, because the court immediately cautioned the jury to disregard it. We are unable to agree with this specious kind of argument. In Tanner v. Harper (Colo.) 75 P. 404, a personal injury case, in which one of the learned counsel for plaintiff here was an attorney, plaintiff's counsel, in his opening statement, said that an insurance company was the real party defendant in interest: and, upon their voir dire, over the objection of defendants, he was permitted to ask each juror whether he was acquainted with the insurance company in question, or had been in its employ. It was argued there that plaintiff was entitled to know if any of the panel of jurors was interested in the insurance company, so as to exclude them from the jury that was to try the case. Such excuse cannot be given here, and we did not hold it valid there; but, as there were no close questions of fact in the Tanner Case for the determination of the jury, it affirmatively appeared that the defendants were not prejudiced by the alleged errors. But here, as we have seen, the jury had been selected when the comment was made. There were several closely contested questions of fact and there had been one mistrial, and it may be that the jurors were largely influenced in returning the verdict against defendants because this improper statement of counsel convinced them that some insurance corporation, and not the defendants, would respond for any damages that might be awarded. We are satisfied that the unfavorable impression on the minds of the jury was not removed by the direction of the court to disregard the statement. Counsel knew when he made it that it was improper and reprehensible, and it is fair to presume that he would not have done so, had he not supposed that some advantage to his client

would thereby be gained. In such cases counsel, who thus seeks to obtain that result, takes upon himself the risk of losing what he hopes to secure. The following, among other cases, are authority for the reversal of the judgment for such conduct of counsel: Tremblay v. Harnden, 162 Mass. 383, 38 N. E. 972; Grant v. Varney, 21 Colo. 329, 40 P. 771; Tucker v. Henniker, 41 N. H. 217; Cosselmen v. Dunfee, 172 N. Y. 507, 65 N. E. 494; Manigold v. Black River T. Co., 80 N. Y. Supp. 861; Eckhart & Swan M. Co. v. Schaefer, 101 Ill. App. 500; Herrin v. Daly, 80 Miss. 340, 31 South. 790, 92 Am. St. Rep. 605; Sawyer v. Arnold Shoe Co., 90 Me. 369, 38 Atl. 333."

So, in the case at bar, the defendant in error in his brief comments as follows:

"In the course of the argument in the case at bar, plaintiff's counsel discussing the liability of the defendant for acts of its agent, suggested in substance that the agent might be under bond and that the lodge could collect off of him for any loss in the case. It is submitted that whether the agent was under bond or not, if he had wronged his employer by his misconduct, the law makes him answerable to his employer. The statement was merely to **emphasize the liability** of the agent to his principal, and, if true, neither enlarged nor diminished the liability of the defendant to the plaintiff, and could not in any sense have been prejudicial. It is respectfully submitted that counsel had a right to argue that the principal could not escape liability for wrongs done to the plaintiff merely because it did such wrongs by an agent and not personally. The defendant was liable for the acts of its agent, and if its agent did the wrong, it is a matter to be adjusted between the principal and its agent. The reference to the possibility of his being bonded merely called attention **to a custom universally recognized** as the manner by which a principal protects itself against the wrongful conduct of an agent and even though it might have been somewhat irrelevant to the issues, was within the scope of legitimate argument. The suggestion when objected to was immediately withdrawn from consideration of the jury by the court and by counsel making it, and the jury were admonished not to consider the statement at all. No further reference to the matter was made anywhere in the course of the trial."

From the argument, the attitude of counsel in making the statement is clear. Such was the attitude of counsel in the case of Coe et al. v. Van Why, 80 P. 894, supra, where counsel in his argument expresses himself in almost identical language. This sort of argument we cannot approve. It is not harmless error. It is like a rapier thrust in a vital spot and then withdrawing the blade with apologies. Lawsuits should be won on their merits, and not by ingenious argument fraught with unfair assertions sought to procure an unfair advantage over one's adversary based upon propositions that in the very nature of things counsel should know are not, and could not be, competent testimony in the case. As above stated, neither an attorney nor his client should be permitted to gain an advantage by such conduct.

The statement of counsel was prejudicial to the rights of the defendant and could not be cured. The judgment rendered by the trial court is reversed, and the cause remanded for a new trial.

The Supreme Court acknowledges the aid of Attorney John W. Hayson, V. E. McInnis, and J. D. Lydick in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Hayson and approved by Mr. McInnis and Mr. Lydick, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.